**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 1:24-292** |
| **ROBERTO RIVERA,** | : | **(JUDGE MANNION)** |
| **Defendant** | : | |

**MEMORANDUM**

Pending before the court is defendant Roberto Rivera's (hereinafter "Defendant") motion to suppress evidence pursuant to Fed. R. Crim. P. 12(b). (Doc. 29). Defendant is charged with possession with intent to distribute cocaine, in violation of 21 U.S.C. §841(a)(1), and possession with intent to distribute marijuana, in violation of 21 U.S.C. §841(a)(1). The drug evidence was seized following a March 21, 2024, traffic stop. Defendant seeks the court to suppress the drug evidence obtained from the vehicle that he was driving, alleging that it was obtained unlawfully under the Fourth Amendment. Defendant contends that the evidence was unlawfully obtained because the officer did not have a warrant to seize his phone, wallet, or cash, and that, therefore, the search of the vehicle was derivative of an illegal search. Defendant also seeks, in his reply brief, (Doc. 32), to the

Government's brief in opposition, an evidentiary hearing to establish a factual record.

For the reasons discussed below, after consideration of the briefs and the evidence submitted, including the body cam video recordings of the traffic stop, the motion to suppress the evidence will be **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On March 21, 2024, at approximately 11:08 p.m., Northern York County Regional Police Officer Austin Rardain, assisted by Officer Aaron Witmoyer, stopped Defendant and his passenger Mr. Luis Santiago, the owner of the vehicle, at a Sheetz gas station due to a suspected window tint violation on Mr. Santiago's silver Honda Accord. Officer Rardain then discussed the violation with the passengers before returning to his vehicle to run a background check on the Accord. Upon discovering that both Defendant and Mr. Santiago had suspended driver's licenses, Officer Rardain asked Defendant to step out of the vehicle at approximately 11:15. As Defendant exited the vehicle, Officer Rardain allegedly identified the

---

[1] The court notes that for present purposes it bases the factual background of this case on the briefs of the parties, the exhibits, and the body cam video recordings of the March 21, 2024, traffic stop.

The court also notes that all the times stated herein are approximate times based on the body cam videos and are during the late evening hours of March 21, 2024.

smell of marijuana both from the Defendant and from the car. Officer Rardain then asked Defendant, "When was the last time you smoked," to which Defendant responded, "I don't smoke weed," despite no prior mention of marijuana.

At approximately 11:17, Officer Rardain then directed Mr. Santiago to exit the Accord. Mr. Santiago indicated a willingness to allow a search of the vehicle, which he owned, but Defendant protested, telling the officers to tow it and obtain a warrant. Officer Rardain and Officer Witmoyer then searched the persons of Defendant and Mr. Santiago. After further protest from Defendant, Officer Rardain made the decision to tow the vehicle and obtain a warrant. He asked Defendant and Mr. Santiago if there was anything that they wanted him to retrieve from the vehicle before towing. Mr. Santiago requested his dog's harness. Officer Rardain, at approximately 11:21, then searched the backseat of the vehicle, allegedly seeing what he described as marijuana "shake" on the floor between the driver's seat and the front left door to the Accord. He was in a position to view the alleged "shake" because he needed to open the driver's door in order to unlock the backdoor to look for the dog harness as requested.

Officers Rardain and Witmoyer then returned to their police vehicle to conduct further investigation. At approximately 11:24, while in the police

vehicle, Officer Witmoyer notified Officer Rardain that "when I searched [Defendant], in the wallet, I found a decent amount of cash." Officer Rardain then exited the vehicle and asked Defendant "how much cash you got on you," to which Defendant took his wallet out of his pocket and his money out of his wallet and remarked "about $200." None of the individual bills appeared to exceed $20. After Officer Rardain asked what Defendant does for work, Defendant asked "what does [the cash] got to do with this," to which Officer Rardain replied "well, I don't know if you guys are dealing drugs or not." Officer Rardain ultimately seized the money.

Officer Rardain then returned to his police vehicle, ran more information in his vehicle's computer, and discovered that Defendant has multiple prior arrests for possession with intent to distribute controlled substances. Officer Rardain then exited his vehicle and, at approximately 11:27, said to Defendant "alright man, I'm going to take your phone too" and "this is an investigation for a possible PWI [possession with intent to distribute]." When Defendant did not turn over his phone, Rardain took the phone from Defendant's hand. After some protest from Defendant as to why he was seizing the phone and the money, Officer Rardain remarked that Defendant has five PWIs and a "stack of cash" totaling $340. Officer Rardain then asked, at approximately 11:29, for consent to search both Defendant's

and Mr. Santiago's phones. Mr. Santiago consented to the search, while Defendant denied the request. Officer Rardain attests that he did not find any incriminating evidence in Mr. Santiago's phone. (Doc. 31-2).

At approximately 11:32, Officer Rardain notified Defendant and Mr. Santiago that they were "free to go," but that he was taking Defendant's money and cellphone for further investigation. He allowed Mr. Santiago to keep his cellphone. At approximately 11:33, Officer Rardain and Officer Witmoyer got into the police vehicle and drove away to follow the tow truck, and the incident ended.

Four days after the incident, on March 25, 2024, Officer Rardain obtained a search warrant for the vehicle. (Doc. 31-2). In his affidavit for probable cause, Officer Rardain noted the "slight odor of marijuana." *Id.* With respect to the phone and money that he seized, Officer Rardain wrote that "I know through my training and experience that drug dealers will often carry large quantities of cash, as well as make drug transactions through text messages and social media on their phones, so I seized his cash and phone as well as a part of my investigation." *Id.* Officer Rardain further noted that both Defendant and Mr. Santiago "have a long history of Possession with Intent to Distribute Narcotics." *Id.* Only following receipt of the search warrant

did Officer Rardain conduct the vehicle search. In his post-search investigation report, he noted that:

> The trunk of the car had multiple safety vests, 2 dog harnesses, and a black draw string bag. I opened the black draw string bag and located 2 large bags of what appeared to be powder cocaine, 5 large bags of raw marijuana, a black digital scale with white powder resid[u]e, $135 in cash that was made up of 6 $20 bills, a $10 bill, a $5 bill, and a cotton beanie that was similar to the one that Santiago was wearing on the scene of the stop. A preliminary weight of the drugs showed that 1 of the bags of cocaine was approximately 100 grams, the other bag of cocaine was approximately 40 grams, the largest bag of raw marijuana was approximately a pound, and the other 4 bags of raw marijuana were approximately 30 grams each. The marijuana was vacuum sealed, and the pound bag was labeled "Super Sour 6 Bee."

(Doc. 31-1).

Following the vehicle search, Officer Rardain obtained a search warrant for Defendant's cellphone based on the drugs recovered in the vehicle search. (Doc. 31-3).

On October 30, 2024, a federal grand jury issued a two-count indictment charging Defendant with violations of 21 U.S.C. §841(a)(1),

possession with intent to distribute a controlled substance, on or about March 21, 2024. (Doc. 1).

On November 15, 2024, Defendant appeared before Judge Bloom for arraignment and pled not guilty to the charges. (Doc. 13). On July 11, 2025, Defendant filed a motion to suppress evidence and a brief in support. (Docs. 29, 30). The motion to suppress pertains to the suppression of the drug evidence seized from the traffic stop, as well as the money, wallet, and cellphone seized from Defendant during the stop.

The Government filed its brief in opposition to Defendant's motion to suppress on July 25, 2025. (Doc. 31). The Government also submitted exhibits, including the investigation report from Officer Rardain, (Doc. 31-1), the application for a search warrant for the vehicle with the affidavit of probable cause, (Doc. 31-2), and the application for a search warrant for the cellphone with the affidavit of probable cause, (Doc. 31-3).

Defendant filed his reply brief on July 31, 2025, requesting an evidentiary hearing on the motion. (Doc. 32).

On August 13, 2025, the court conducted a pretrial conference with the parties. (Doc. 36). The court directed the Government to provide the body cam footage to the court. *Id.* The Government submitted the footage on August 14, 2025.

- 7 -

## II.    LEGAL STANDARD

The Fourth Amendment generally requires police to secure a warrant supported by probable cause before conducting a search, unless a recognized exception to the warrant requirement exists. *Lange v. California*, 594 U.S. 295, 141 S.Ct. 2011, 2017, 210 L.Ed.2d 486 (2021).

Protection against unreasonable searches and seizures is enshrined in the Fourth Amendment, which states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"The Fourth Amendment, like the other Amendments contained in the Bill of Rights, imposes direct limitations on the actions that may be taken by the Federal Government." *Adams v. Springmeyer*, 17 F.Supp.3d 478, 490 (W.D. Pa. 2014) (citing *McDonald v. City of Chicago*, 561 U.S. 742, 753-55, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010)). The Fourth Amendment's purpose is to "safeguard the privacy and security of individuals against arbitrary invasions" by the government. *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523,

528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). For purposes of the Fourth Amendment, a search "occurs when an expectation of privacy that society is prepared to consider as reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Generally, a search "requires a warrant supported by probable cause." *Carpenter v. United States*, 585 U.S. 296, 138 S.Ct. 2206, 2213, 201 L.Ed.2d 507 (2018) (citing *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)). "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (internal quotations omitted). An affidavit in support of a search warrant "must contain adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996).

"[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). "[U]nder the reasonable expectation of privacy test, the Fourth Amendment protects against an unreasonable search of an area in which (1) a person

exhibits actual, subjective expectation of privacy, and (2) the expectation is one that society is prepared to recognize as reasonable." *United States v. Ellis*, 270 F.Supp.3d 1134, 1140 (N.D. Cal. 2017) (citing *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). "Under *Katz*, the capacity to claim Fourth Amendment protection does not strictly depend on a property right in the invaded place, but whether the person asserting the claim has a legitimate expectation of privacy." *Id.* (citations omitted).

"Under the exclusionary rule 'evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'" *United States v. Lara-Mejia*, 482 F.Supp.3d 281, 293 (M.D. Pa. 2020) (quoting *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). "This prohibition also applies 'to the fruits of the illegally seized evidence.'" *Id.* "The rule operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *Id.* (citations omitted).

Generally, "the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citation omitted). "However, once the defendant has established a

basis for his motion, i.e., the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable." *Id.* (citation omitted). Stated otherwise, where the search or seizure was conducted without a warrant, the government "must establish by a preponderance of the evidence when the seizure occurred and that it was supported by reasonable suspicion." *United States v. Lowe*, 791 F.3d 424, 432 n. 4 (3d Cir. 2015). That is, the government then must show that the warrantless search falls within "certain reasonable exceptions." *Kentucky v. King*, 563 U.S. 452, 459, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011).

## III.    DISCUSSION

This court has jurisdiction over Defendant's motion to suppress under 18 U.S.C. §3231. A criminal defendant brings a pre-trial motion to suppress under Fed. R. Crim. P. 12(b)(3)(C), in an effort "to show that evidence against him or her was unconstitutionally obtained." *United States v. Hernandez*, 2015 WL 5123924, *4 (M.D.Pa. 2015).

There is no dispute that Officer Rardain's traffic stop of Defendant was lawful. The rear windows of the Honda Accord were tinted in violation of Pennsylvania law. Furthermore, both Defendant and Mr. Santiago had suspended driver's licenses, warranting a stop. Rather, Defendant contends

that the seizure of the drug evidence was unconstitutional because the warrant for the search derived from Officer Rardain's unconstitutional seizure of his wallet, $340 in cash, and cellphone. The court addresses these contentions below.

### A. Was Officer Rardain's seizure of Defendant's wallet, money, and cellphone unconstitutional?

#### i.    Plain feel and plain view

The plain feel and plain view doctrines are exceptions to the Fourth Amendment warrant requirement for searches and seizures. The plain feel doctrine allows police officers to seize suspected contraband during a *Terry* frisk if they can identify with probable cause that the item in question is contraband by "plain feel" during the frisk. *See Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130 (1993) (establishing the plain feel doctrine by extending the plain view doctrine to the sense of touch). This doctrine derives from the plain view doctrine. The plain view doctrine allows a police officer to seize contraband (and other evidence if its incriminating character is immediately apparent) without a warrant where it is in "plain view;" simply, the officer can seize such evidence where there is probable cause that the item is illicit, and the officer is lawfully in a position to view the object. *See Horton v. California*, 496 U.S. 128, 136-137, 110 S.Ct. 2301 (1990); *see also Dickerson* at 375 ("if police are lawfully in a position from which they view an

- 12 -

object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant"). Therefore, courts may consider an officer's training in determining whether it is apparent that an item of evidence is incriminating. *See United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690 (1981) (acknowledging that "a trained officer draws inferences and makes deductions . . . that might well elude an untrained person"). Finally, "[a] large amount of cash, in and of itself, is not *per se* incriminating . . . [however], [t]his is not to say that large amounts of cash may *never* be inherently incriminating. The incriminating nature of a large amount of cash *may* be immediately apparent—thus giving rise to probable cause—where the totality of the circumstances provides some indication that the cash is contraband." *United States v. Law*, 384 Fed.Appx. 121, 122-23 (3d Cir. 2010).

Here, Defendant consented to a search of his person specifically for marijuana. Officer Witmoyer conducted the search and reported back to Officer Rardain that he felt a large amount of money in Defendant's pocket. Defendant seeks to suppress the money seized by Officer Rardain because this exceeded the scope of the consent given. Without needing to address

the merits of this argument, the court disagrees on the basis of the plain view doctrine.

Critically, Officer Witmoyer did not seize the money when he searched Defendant for drug evidence. Rather, he notified Officer Rardain and Officer Rardain then asked Defendant "how much cash you got on you." In response, Defendant took his wallet out of his pocket, took the money out of the wallet, and put $340 in cash, in bills apparently not exceeding the value of $20, in plain view of Officer Rardain, who then seized the money. Given that Officer Rardain had already identified the odor of marijuana and that he identified, both during the incident and afterward in his reports, that his training and expertise make him aware that drug dealers carry large sums of cash, he had probable cause to seize the cash without need for a warrant under the plain view doctrine. The same is true of the wallet.

### ii.    Exigent circumstances

Another exception to the Fourth Amendment warrant requirement is the exigent circumstances exception. This exception applies when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable." *Kentucky v. King*, 563 U.S. 452, 460, 131 S.Ct. 1849, 1856 (2011). One such exigent circumstance

is "when police fear the imminent destruction of evidence." *Birchfield v. North Dakota*, 579 U.S. 438, 456, 136 S.Ct. 2160, 2173 (2016) (citation omitted).

Turning to Defendant's cellphone, Officer Rardain seized the phone without a warrant. Relevantly, Officer Rardain already identified the odor of marijuana and lawfully seized Defendant's money by the time he seized the cellphone. A legitimate drug investigation was under way. Officer Rardain stated that he was seizing the phone because his experience and training taught him that drug dealers often have evidence of transactions on their phones. Notably, Officer Rardain did not search the phone without Defendant's consent, nor without a warrant. Given these circumstances, as well as the ease with which one can delete phone data (including messages and photographs), Officer Rardain's seizure of the cellphone was not a Fourth Amendment violation because there was a sufficient basis for "fear of imminent destruction" of any evidence that may have been contained within the cellphone.

### B. Was Officer Rardain's seizure of drug evidence from the car unconstitutional?

In *United States v. Ramos*, the Third Circuit Court of Appeals noted that "It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." 443 F.3d 304, 308 (3d Cir. 2006) (citing *United States v. Humphries*,

372 F.3d 653, 658 (4th Cir. 2004) ("[T]he odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place.")). In *United States v. Outlaw*, the court clarified that "there must be facts that connect the smell to an individual passenger for there to be probable cause to arrest that passenger." 138 F.4th 725, 729 (3d Cir. 2025). The court further stated that "where . . . there are multiple individuals within the vicinity of the smell, there is not probable cause of marijuana possession particularized to any one person absent additional facts." *Id.* (citing *Humphries*, 372 F.3d at 659).

Here, while a warrantless search was not conducted, nor was an arrest made on the night of March 21, 2024, it is still worth noting that Officer Rardain had probable cause to seize the vehicle in the absence of a warrant due to the marijuana odor. Furthermore, while two individuals were in the vehicle at the time of the stop, Officer Rardain did not smell the marijuana until he ordered Defendant to step out of the vehicle (due to his expired driver's license). The marijuana odor was particularized to not just the vehicle as a whole, but to Defendant himself. Thus, Officer Rardain had probable cause to seize the vehicle and to search the vehicle. As a precautionary measure, Officer Rardain did not search the vehicle until obtaining a warrant

anyway. It is clear from these facts that Officer Rardain's actions did not violate the Fourth Amendment.

Consequently, even if Officer Rardain's actions with respect to the cellphone and money were unconstitutional, which they were not, the drug evidence would still be admissible on the ground that there was a particularized marijuana odor, which was sufficient for probable cause and for a search warrant.

### C. The good faith exception to the Fourth Amendment's exclusionary rule would apply even if the court found contrary to its aforesaid conclusions.

The good faith exception to the Fourth Amendment exclusionary rule prohibits suppression of "evidence obtained by officers reasonably relying on a warrant issued by a detached and neutral magistrate." *United States v. Leon*, 468 U.S. 897, 898, 104 S.Ct. 3405 (1984). Further,

> when an officer acting with objective good faith has obtained a search warrant from a judge or a magistrate and acted within its scope . . . there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause

determination or his judgment that the form of the warrant is
technically sufficient.

*Id.* at 920.

In *United States v. Tracey*, the Third Circuit identified four situations in
which the good faith exception does not apply because of a deficient warrant:
"(1) where the magistrate judge issued a warrant in reliance on a deliberately
or recklessly false affidavit; (2) where the magistrate judge abandoned his or
her judicial role and failed to perform his or her neutral and detached
function; (3) where the warrant was based on an affidavit so lacking in indicia
of probable cause as to render official belief in its existence entirely
unreasonable; or (4) where the warrant was so facially deficient that it failed
to particularize the place to be searched or the things to be seized." 597 F.3d
140, 151 (3d Cir. 2010).

Here, the good faith exception applies. The court finds no issues with
the affidavits, nor with the judge's granting of those warrants. Simply, Officer
Rardain properly obtained search warrants, and even if the evidence
discussed herein should otherwise be suppressed, the good faith exception
dictates admission.

- 18 -

## IV.    CONCLUSION

For the aforesaid reasons, Defendant's motion to suppress evidence will be **DENIED**, without an evidentiary hearing. An appropriate order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: September 29, 2025**
24-292-01

- 19 -